IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SONIA HERNANDEZ          :        CIVIL ACTION
Plaintiff,                 :
                                 :
       v.               :
                                 :
JO ANNE B. BARNHART,         :
Commissioner of Social Security,    :
Defendant                :       No. 04-5458

## REPORT AND RECOMMENDATION

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE                 July     , 2005

       This action was brought pursuant to 42 U.S.C. § 405(g) to review the final

decision of the Commissioner of Social Security ("Commissioner") denying the claims of

Sonia Hernandez ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  The parties have filed cross-

motions for summary judgment.  For the reasons set forth below, I recommend that

Plaintiff's motion for summary judgment be denied; Defendant's motion for summary

judgment be granted; and the final decision of the Commissioner be affirmed.

## I.      PROCEDURAL HISTORY

       Plaintiff protectively filed an application for SSI on November 5, 2001, alleging

that she became disabled on that date due to asthma and fluid on her knee.  (Tr. 102-103,

116).  After Plaintiff's application was denied, Plaintiff requested an administrative

hearing before an Administrative Law Judge ("A.L.J.").  (Tr. 80-85, 87).  A hearing was

held on January 14, 2004, during which Plaintiff and a vocational expert ("VE") testified.

(Tr. 52-79).  Plaintiff's claim was denied by the A.L.J. on February 27, 2004.  (Tr. 23-37).

After reviewing additional evidence submitted by Plaintiff, the Appeals Council denied Plaintiff's request for review on September 24, 2004, making the A.L.J.'s decision the final decision of the Commissioner.  (Tr. 8-11).  Plaintiff then filed this action for judicial review of the final decision of the Commissioner.

## II.   STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner is limited.  The District Court is bound by the findings of the Commissioner if they are supported by substantial evidence and were decided according to correct legal standards.  42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994); Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989); Doak v. Heckler, 709 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate."  Burnett v. Apfel, 200 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  Even if the record could support a contrary conclusion, the decision of the A.L.J. will not be overturned if the A.L.J.'s findings were supported by substantial evidence.  Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

Under the Social Security Act, a claimant is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period

2

of not less than twelve (12) months."  42 U.S.C. § 423(d)(1)(A).  A five- (5-) step

sequential evaluation has to be used to evaluate a disability claim.[1]  The initial burden of

proving disability rests with the claimant, who can meet this burden by demonstrating an

ability to return to previous work.  Stunkard v. Secretary of Health and Human Services,

841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1).  Once a showing is made, the

burden of proof shifts to the Commissioner to show that the claimant, given his or her

age, education and work experience, has the ability to perform specific jobs that exist in

the economy.  Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).

Although deference to administrative decisions is implied by the foregoing

standard, the court is still responsible for scrutinizing the entire record, and to reverse and

remand to the A.L.J. if the A.L.J.'s decision is not supported by substantial evidence.

Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

_____

[1]The steps are as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . , which result in a presumption of disability, or whether the claimant retains the capacity for work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000); see also 20 C.F.R. § 416.920.

III.   **FACTS**

   A.    **Plaintiff's Background and Hearing Testimony**

   Plaintiff was thirty-eight (38) years old at the time of her hearing.  (Tr. 60, 103).

She was five (5) feet, three (3) inches tall and weighed 210 pounds.  (Tr. 115).  Plaintiff

has a seventh grade education and does not understand English.  (Tr. 60, 122).

   At the hearing, Plaintiff testified that she lives with her cousin and fifteen (15) year

old daughter.  (Tr. 59).  She has not worked in at least fifteen (15) years due to her

anxiety, asthma, headaches and pain from multiple sclerosis.  (Tr. 60-62).  Plaintiff

receives weekly Avonex[2] injections for treatment of her multiple sclerosis which causes

her body pain and headaches.  (Tr. 63, 68-69).  On a typical day, Plaintiff smokes about

fifteen (15) cigarettes and performs chores around the house such as cooking, cleaning,

and laundry.  (Tr. 64-65).  She does not clean the floors, however, because it hurts her

legs and does not go shopping because she does not like to leave her house.  (Tr. 65-66).

Plaintiff noted that she has trouble concentrating due to her constant anxiety.  (Tr. 70).

She also testified that she hears voices in her head approximately four (4) times per week

and cries on a daily basis.  (Tr. 71-72).

   B.    **Medical Evidence**

   Plaintiff received treatment for symptoms of asthma and knee pain in 2000 and

---

   [2]Avonex is indicated for the treatment of patients with relapsing forms of multiple
sclerosis to slow the accumulation of physical disability and decrease the frequency of clinical
exacerbations.  Physicians' Desk Reference, 59th ed. (2005) ("PDR") at 952.

4

2001.  (Tr. 133-141).  On May 17, 2001, Plaintiff was admitted to the emergency room for chest pain and shortness of breath.  (Tr. 133).  A chest x-ray revealed no active disease in the lungs.  (Tr. 139).

On January 7, 2002, Arturo J. Ferreira, M.D., performed a consultative examination at the request of the state agency.  (Tr. 162-164).  Plaintiff's primary complaints were shortness of breath and left knee pain.  (Tr. 162).  Upon examination, Dr. Ferreira found few rhonchi and no wheezing in Plaintiff's chest, and slight crepitation upon flexion and extension of the left knee.  (Tr. 163).  The doctor diagnosed bronchial asthma, a likely minor tear of the meniscus of the left knee and obesity.  (Tr. 163).  He advised Plaintiff to avoid primary or secondary smoking and high impact activities.  (Tr. 163).  He also noted that Plaintiff's obesity "would be detrimental for her bronchial asthma and knee pain" and advised a weight reduction program.  (Tr. 164).  Dr. Ferreira concluded that Plaintiff's physical impairments did not limit her functional ability to perform any work-related activities.  (Tr. 165-166).

On February 19, 2002, a medical expert reviewed Plaintiff's medical record and opined that Plaintiff could perform the physical demands of medium work[3] with both postural and environmental limitations.  (Tr. 168-175).

On March 25, 2002, a psychological evaluation performed by Lidia Cotes, a

---

[3]Medium work involves lifting no more than fifty (50) pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five (25) pounds.  20 C.F.R. § 416.967(c).  If someone can do medium work, the Social Security Administration has determined that he or she can also do sedentary and light work.  Id.

therapist, revealed that Plaintiff had appropriate affect; "good" reality testing and eye contact; and was oriented to person, place and time.  (Tr. 226, 247).  Although Plaintiff's mood was anxious, her speech was coherent, informative, and understandable.  (Tr. 226-227).  Plaintiff's recent, past and remote memory was characterized as "good," while her memory retention was "fair."  (Tr. 227).  Plaintiff's insight, awareness, and judgment were all deemed "adequate," and her intelligence was found to be "below average."  (Tr. 227).

Plaintiff stated that she was irritable, depressed, anxious, and having sleeping problems.  (Tr. 231).  She also noted that she had poor memory and concentration, along with a bad attitude.  (Tr. 232-233).  Plaintiff's strengths were listed as: ambulatory, good physical health, willing to cooperate with treatment, can cook, can drive/has car, does shopping independently, good personal hygiene, and takes care of self.  (Tr. 233).  Ms. Cotes opined that Plaintiff had an adjustment disorder with anxious mood and assessed her with a Global Assessment of Functioning ("GAF") score of 55.[4]  (Tr. 247).

On April 2, 2002, Christos Ballas, M.D., a psychiatrist, examined Plaintiff pursuant to her complaints of anxiety, depression, irritability, hyperactivity, sleeplessness, chronic crying spells and auditory hallucinations.  (Tr. 246).  The doctor concluded that

---

[4]The GAF score is a measurement of a person's overall psychological, social, and occupational functioning, and is used to assess mental health.  Diagnostic and Statistical Manual of Mental Disorders, 4th ed. Text Revision (2000), ("DSM IV-TR"), at 32.  A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., no friends, conflict with peers or co-workers).  DSM IV-TR, at 34.

Plaintiff was dramatic, overwhelmed by social issues, and had poor frustration tolerance. (Tr. 246). He diagnosed Plaintiff with major depressive disorder, mixed personality disorder, and assessed her with a GAF of 55. (Tr. 246). Dr. Ballas prescribed Effexor[5] and Risperdal.[6] (Tr. 246).

On January 2, 2003, Plaintiff underwent an MRI of the brain which revealed findings "most consistent with plaques of multiple sclerosis." (Tr. 177). The largest lesion demonstrated "very mild early enhancement." (Tr. 177). On January 22, 2003, Plaintiff was advised to take Avonex once a week pursuant to her diagnosis of multiple sclerosis. (Tr. 270).

On January 6, 2003, an MRI of Plaintiff's cervical spine revealed no evidence of abnormal signal or enhancement within the cervical cord. (Tr. 224).

Plaintiff underwent multiple tests in January through April 2003. A "Brainstem Auditory Evoked Potential Report" and "Median Nerve Somatosensory Evoked Potential Report" both yielded normal results. (Tr. 265-266). A "Visual Evoked Potential Study" yielded abnormal results consistent with delays in relevant white matter pathways. (Tr. 267). An MRI of Plaintiff's knees revealed minimal degenerative joint disease with no acute bony or joint abnormality and no joint effusion. (Tr. 185). An MRI of Plaintiff's brain indicated stable or decreased size of all plaques except for the left frontal lesion

---

[5]Effexor is indicated for the treatment of major depressive disorder. PDR at 3321.

[6]Risperdal is indicated for the treatment of schizophrenia. PDR at 1748.

which appeared to increase in size.  (Tr. 187).  No new foci of demyelination were noted.

(Tr. 187).

On April 23, 2003, Dr. Ballas noted that Plaintiff continued to suffer from anxiety,

depression, low energy, and chronic suicidal ideation.  (Tr. 228).  The doctor determined

that Plaintiff had a GAF of 60 and prescribed Wellbutrin[7] and Restoril.[8]  (Tr. 228).

On September 18, 2003, Dr. Ballas completed a "Medical Source Statement of

Ability to Do Work-Related Activities (Mental)."  (Tr. 283-284).  Dr. Ballas concluded

that Plaintiff was "markedly impaired" in her ability to maintain attention for extended

periods; perform activities within a schedule, maintain regular attendance and be

punctual; sustain an ordinary routine without special supervision; sustain tasks without

unreasonable number of breaks or rest periods; work with or near others without being

distracted by them; perform at a consistent pace; interact appropriately with the public;

maintain socially appropriate behavior; avoid altercations; respond appropriately to

changes and stress; be aware of normal hazards and take appropriate precautions; travel to

unfamiliar places or use public transportation; set realistic goals or make plans

independently of others; and perform normal activities of daily living without

unreasonable dependence on others.  (Tr. 283-284).  The doctor noted that Plaintiff had

---

[7]Wellbutrin is indicated for the treatment of depression.  PDR at 1656.

[8]Restoril is used for the relief of insomnia (difficulty in falling asleep, waking up
frequently at night, or waking up early in the morning).  See www.healthsquare.
com/newrx/res1373.htm (June 13, 2005).

experienced one (1) to two (2) episodes of decompensation and stated that Plaintiff could be expected to decompensate if required to function independently outside of her home or if placed into a full-time employment setting. (Tr. 284). Dr. Ballas did not provide any supporting findings or diagnoses to support this assessment. (Tr. 284).

On October 29, 2003, Plaintiff presented to her health care provider for a routine check-up and reported no complaints. (Tr. 248). Plaintiff's asthma medication was changed to Flovent[9] and she was advised to continue her present care for her multiple sclerosis. (Tr. 248).

On December 17, 2003, Plaintiff was examined pursuant to her complaints of knee pain and "easy tiredness" from Avonex injections. (Tr. 281). Plaintiff was noted to have no back pain, no visual changes and no other complaints. (Tr. 281). Plaintiff's speech and language were normal and she was found to be alert, awake, and oriented to time, place and person. (Tr. 282). Plaintiff's motor examination was normal and her sensory system was intact and symmetrical. (Tr. 282). Plaintiff was advised to consult with an orthopedic doctor for her knee pain and to take Aleve or Tylenol before an Avonex injection to avoid the fatigue she experiences from the medication. (Tr. 282).

On January 14, 2004, the date of Plaintiff's administrative hearing, Milagro Soto, D.O., wrote a letter "To Whom It May Concern" indicating that Plaintiff had multiple

---

[9]Flovent oral inhalers are used to prevent flare-ups of asthma. See www.healthsquare. com/newrx/flu1182.htm. They sometimes serve as a replacement for the steroid tablets that many people take to control asthma. Id.

sclerosis, low back pain and asthma.  (Tr. 286).  The doctor noted that Plaintiff's multiple

sclerosis caused leg pain which made her unbalanced and necessitated the use of a cane.

(Tr. 286).  Dr. Soto also stated that Plaintiff could only walk one-half (½) of a block

before requiring a break.[10]  (Tr. 286).

C.      Testimony of Vocational Expert

At Plaintiff's hearing, the A.L.J. called a V.E. who testified that Plaintiff did not

appear to have any past relevant work.  (Tr. 76-78).  The A.L.J. asked the V.E. to consider

a hypothetical non-English speaking individual of Plaintiff's age, with the same

education, who could lift up to ten (10) pounds, sit for six (6) hours, stand and walk for

two (2) hours, and who would be limited to simple, repetitive tasks with occasional

contact with the public and with co-workers.  (Tr. 76).  The individual could also

occasionally engage in postural activities.  (Tr. 76).  The V.E. testified that such an

individual could perform work that exists in the national economy, such as assembler,

packer, and inspector.  (Tr. 77).

---

[10]Plaintiff has also submitted evidence from a clinical psychological disability evaluation completed by Loren Laviolette, Ed.D., on June 11, 2004 (over three months after the A.L.J.'s decision).  (Tr. 289-291).  The Commissioner argues that this court is barred from reviewing this evidence because it was not presented to the A.L.J. and, thus, "cannot be used to argue [that] the A.L.J.'s decision was not supported by substantial evidence."  Matthews v. Apfel, 239 F.3d 589, 595 (3d Cir. 2001) (quoting Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991)).  I agree.  The evaluation at issue does not relate back to the time period under review and as such, is not properly before this court for review.  Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984) (new evidence must relate to the time period for which benefits were denied, and must not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition).

When questioned by Plaintiff's attorney, the V.E. testified that an individual who has either a markedly impaired ability to maintain attention for extended periods and perform activities within a schedule, or a markedly impaired ability to perform at a consistent pace, would not be able to perform any substantial, gainful activity.  (Tr. 77-78).

## IV.   DISCUSSION

By decision dated February 27, 2004, the A.L.J. found in relevant part:

1.  [Plaintiff] has not engaged in substantial gainful activity since November 5, 2001.

2.  The medical evidence establishes that [Plaintiff] suffers from asthma, an anxiety disorder, and multiple sclerosis, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  (20 CFR § 416.921).

3.  The undersigned finds [Plaintiff's] allegations regarding her limitations are not totally credible . . . .

4.  [Plaintiff] retains the capacity to perform sedentary work diminished by significant additional limitations as she can only stand/walk for two [2] hours in an eight [8] hour day; can occasionally climb, balance, bend, stoop, kneel, crouch, squat and crawl; and is restricted to work that involves simple repetitive tasks with only occasional contact with the public and co-workers.

5.  [Plaintiff] is a 'younger individual' with no past relevant work and is unable to communicate in the English language (20 CFR § 416.963, 416.964, and 416.965).

6.  Although [Plaintiff's] exertional limitations did not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.23 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  [Examples omitted.]

* * * *

11

(Tr. 36-37).  Thus, the A.L.J. reached step five (5) of the five- (5-) step sequential

evaluation and found that Plaintiff was not disabled.  (Tr. 37).

Plaintiff contends that the evidence of record demonstrates that she is disabled and

that the A.L.J.'s decision is not supported by substantial evidence.  Specifically, Plaintiff

contends that the A.L.J. erred in:

> (1) failing to assess the effects of Plaintiff's obesity pursuant to Social Security
> Ruling 02-01p;
>
> (2) failing to re-contact Dr. Ballas to clarify the basis for his assessment of
> Plaintiff's Mental Residual Functional Capacity;
>
> (3) failing to elicit an expert equivalency opinion;
>
> (4) failing to include all of Plaintiff's limitations in the hypothetical to the
> vocational expert;
>
> (5) failing to fully credit Plaintiff's subjective complaints of pain;
>
> (6) finding that Plaintiff has the Residual Functional Capacity to perform
> sedentary work; and
>
> (7) failing to conduct a thorough inquiry into the types and level of job
> stresses involved in the jobs identified by the vocational expert.

**A.     Plaintiff's Obesity**

Plaintiff first argues that the decision of the A.L.J. is not supported by substantial

evidence because the A.L.J. failed to conduct a proper analysis of Plaintiff's obesity,

pursuant to Social Security Regulation ("SSR") 02-01p, "Evaluation of Obesity."  SSR

02-01p requires a consideration of obesity at various points in the five- (5-) step analysis.

According to the Social Security Rules, at step two (2), obesity will be deemed a

"severe" impairment "when alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  SSR 02-01p.  There is no doubt that Plaintiff is obese and had a body mass index ("BMI") between 36 to 44 at all relevant times.[11]  Moreover, the A.L.J. was obviously aware of Plaintiff's weight because she remarked that Dr. Ferreira had found that Plaintiff was five (5) feet, two (2) inches tall and weighed 202 pounds.  (Tr. 30).  I note, however, that Plaintiff does not specify how her obesity, alone or in combination, impaired her ability to work, and the record does not provide any evidence of weight-related functional limitations.  Furthermore, Plaintiff did not indicate at her administrative hearing that she was in any way impaired by her weight.  As a result, I find that the A.L.J. did not err in failing to find that Plaintiff's obesity was "severe."

Plaintiff also argues that the A.L.J. erred in not considering whether her obesity met or equaled an impairment at step three (3).  Although obesity is not a separately listed impairment, a claimant will be deemed to have met the requirements if "there is an impairment that, in combination with obesity, meets the requirements of a listing."  SSR 02-01p; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).  In making this argument, Plaintiff does not specify which listing she believes she meets or equals.  See Burch, 400 F.3d at 683.  In addition, she does not set forth any evidence which would

---

[11]BMI is the ration of an individual's weight in kilograms to the square of his or her height in meters.  See SSR 02-1p.  For adults, both men and women, a BMI of 25-29.9 is described as "overweight" and a BMI of 30.0 or above as "obesity."  Id.

support the finding that she met or equaled a listed impairment.  Id.; see also 20 C.F.R. §

416.925(d).  In the absence of evidence to support such a finding, I conclude that the

A.L.J. did not err in failing to find that Plaintiff's obesity caused her to meet or equal the

criteria for a Listing.[12]

     For similar reasons, Plaintiff's argument also fails at step five (5) of the sequential

evaluation.  In evaluating obesity and a claimant's residual functional capacity ("R.F.C."),

the A.L.J.'s assessment "must consider an individual's *maximum* remaining ability to do

sustained work activities in an ordinary work setting on a regular and continuing basis."

See SSR 02-01p (citing SSR 96-8p) (emphasis in original).  As previously stated, there is

no evidence which supports Plaintiff's claim that her obesity limits her functioning.

Moreover, although Plaintiff argues that her existing musculoskeletal and respiratory

impairments were aggravated by her obesity, the record fails to support her allegation that

her obesity worsened the impact of these conditions.  In support thereof, I note that

Plaintiff's asthma was primarily controlled with medication and her knee problems were

deemed minimal.  (Tr. 185).

     In sum, there is no medical evidence in the record that Plaintiff's obesity limited

her in any way, nor was it ever even addressed by a doctor as a concern.[13]  As the Third

---

[12]I note, however, that in evaluating Plaintiff's impairments at step three (3), the A.L.J. did exhaustively address Listing 3.03: Asthma; Listing 3.02: Chronic Pulmonary Insufficiency; Listing 11.09: Multiple Sclerosis; and Listing 12.06: Anxiety Related Disorders.  (Tr. 25-28).

[13]As previously discussed, Dr. Ferreira observed that Plaintiff's obesity "would be detrimental for her bronchial asthma and knee pain," (Tr. 164); however, he also concluded that

Circuit has found, generalized assertions that a claimant's weight makes it more difficult to perform certain activities "is not enough to require a remand, particularly when the administrative record indicates clearly that the A.L.J. relied on the voluminous medical record as a basis for his findings regarding [the claimant's] limitations and impairments" and when none of that medical evidence mentions obesity as contributing to any limitation.  Rutherford v. Barnhart, 399 F.3d 546, 553 & n.5 (3d Cir. 2005). Accordingly, I do not find that the A.L.J. erred in evaluating Plaintiff's obesity at steps two (2), three (3) or five (5) of the sequential evaluation.

### B.      Treating Physician / Re-Contacting Medical Source

Plaintiff next argues that the A.L.J. erred in failing to appropriately consider evidence from his treating physician, Dr. Ballas, which outlines limitations inconsistent with the performance of substantial gainful activity.  See Pl.'s Mot. For Summ. J. at 12-15.  In weighing medical evidence, "the A.L.J. may choose who to credit but 'cannot reject evidence for no reason or for the wrong reason.'"  Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).  "Treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)); see also S.S.R. 96-2p, "Policy Interpretation Ruling: Giving

---

Plaintiff's physical impairments did not limit her functional ability to perform any work-related activities.  (Tr. 165-166).

Controlling Weight to Treating Source Medical Opinions" (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record). "An A.L.J. may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Id. (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1984)); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988) (holding that the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence). Thus, the opinions of a treating physician are only entitled to controlling weight where the physician's opinion on the issues of the nature and severity of a claimant's impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in" the record. 20 C.F.R. § 416.927(d)(2).

In discounting Dr. Ballas's opinion on this issue, the A.L.J. noted that:

> [O]n his initial consultation with [Plaintiff], on April 12, 2002[,] Dr. Ballas opined that she suffered from a major depressive disorder and that her Global Assessment Functioning (GAF) was rated as 55 . . . And one [1] year later on April 24, 2003, he opined a GAF of 60 which though still in the "moderate range" indicates an improvement in her psychological problems.
>
> * * * *
>
> [Dr. Ballas] originally felt that at worst [Plaintiff's] anxiety disorder imposes **moderate** limitations on her. It is noted that [Dr. Ballas]

> then submitted a report dated September 18, 2003, that stated that
> [Plaintiff] was suffering from **marked** psychological symptoms.
> However, the possibility exists that the doctor may be expressing an
> opinion in an effort to assist the patient with whom he sympathizes
> for one reason or another.  While it is difficult to confirm the
> presence of such motives, they are more likely in situations where
> the opinion in question departs substantially from the rest of the
> evidence of record, as in the current case.  The [A.L.J.] notes that the
> record shows [Plaintiff] to be anxious, however her thinking is clear,
> coherent, she is oriented, has a good attitude and shows good
> behavior with an appropriate affect.

(Tr. 32-33) (emphasis in original) (citations omitted).

I find that the A.L.J. provided an adequate explanation for failing to give

controlling weight to Dr. Ballas's opinion regarding Plaintiff's functional limitations.  As

the A.L.J. correctly noted, Dr. Ballas's opinions regarding Plaintiff's functional

limitations due to her mental impairments are not supported by his treatment notes.

Indeed, Dr. Ballas's form assessment provides the only indication that Plaintiff's mental

impairments created limitations which would preclude Plaintiff from performing any

work.  Moreover, the assessment was not accompanied by supporting medical/clinical

findings and diagnoses which would uphold his assessment or which would support his

conclusion that Plaintiff's limitations were significantly more severe than he had

previously found.  (Tr. 284); see 20 C.F.R. § 416.927(d)(2).

Although Plaintiff alleges that the A.L.J. should have re-contacted Dr. Ballas for

clarification or sought an expert medical opinion regarding Dr. Ballas's medical records, I

find that the A.L.J. was under no duty to do so.  Under Social Security regulations, an

A.L.J. has an affirmative duty to develop the record by re-contacting medical sources for clarifications of ambiguous opinions.  See 20 C.F.R. § 416.912(e)(1) (providing that if evidence received from a treating physician or psychologist is inadequate to determine whether the claimant is disabled, the A.L.J. "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques").  In the instant case, I find no ambiguity which would require the A.L.J. to re-contact Dr. Ballas or obtain a medical expert because the evidence provided in the medical record provided a sufficient basis for determining whether or not Plaintiff was disabled.

Upon review of Dr. Ballas's assessment in relation to the record as a whole, I conclude that Dr. Ballas's suggestion that Plaintiff's mental impairment precludes her from engaging in any substantial gainful activity is not supported by the record.[14]

---

[14]Plaintiff argues that the A.L.J. rejected Dr. Ballas's assessment because "his opinion is not supported by reports which indicate . . . little or no . . . use of prescribed medication."  See Pl.'s Mot. For Summ. J. at 13-14; (Tr. 33).  Although Plaintiff's argument is understandable given the lack of clarity in this portion of the A.L.J.'s opinion, I do not believe that the A.L.J. intended to attribute this part of his argument to Dr. Ballas's opinion.  Specifically, the A.L.J. stated:

> While the [A.L.J.] has considered the assessments of Dr. Ballas and Dr. Soto of [Plaintiff's] residual functional capacity, it is noted that: 1) there is a lack of objective clinical or laboratory findings to support the degree of limitation alleged; 2) the record reveals no significant evidence of neurologic compromise which would affect [Plaintiff's] ability to stand, walk, or sit to the degree as indicated; 3) they do not relate their opinions to any specific findings; and, 4) his opinion is not supported by reports which indicate

Consequently, I find that substantial evidence supports the A.L.J.'s decision not to place significant weight on Dr. Ballas's assessment.  <u>See</u> 20 C.F.R. § 416.927(e)(2) (while the opinions of medical sources are utilized in determining whether a claimant's impairments meet or equals the requirements of any impairments in the Listings or the claimant's residual functional capacity, the final responsibility for deciding these issues is reserved to the A.L.J.).

### C.    Eliciting an Expert Equivalency Opinion

Plaintiff next alleges that, the A.L.J. erred in failing to obtain an equivalency review which considered Plaintiff's mental health impairment at step three (3) of the sequential evaluation.[15]  Plaintiff bears the burden of proving that her impairments meet or equal a listed impairment.  <u>Lilly v. Barnhart</u>, 2001 WL 875545, at *4 (E.D. Pa. 2004) (citing <u>Adorno v. Shalala</u>, 40 F.3d 43, 46 (3d Cir. 1994)).  Only if the record "fairly raises the question" of equivalence to a Listing is the A.L.J. required to obtain an updated

───────────────

only routine outpatient care, with little or no continuing treatment or use of prescribed medication.  Consequently, the [A.L.J.] rejects these assessments of [Plaintiff's] *physical capacity*.

(Tr. 33) (emphasis added).  Because the A.L.J.'s concluding sentence attributes the foregoing discussion to a decision regarding Plaintiff's physical capacity, I do not believe that the statement regarding Plaintiff's use of prescribed medication refers to Dr. Ballas's treatment of Plaintiff's mental impairments, but rather refers to Dr. Soto's assessment of Plaintiff's physical impairments.

[15]Plaintiff's application for SSI was initially denied on February 19, 2002, after review of Plaintiff's medical record by a state agency physician.  (Tr. 80).  At this point, Plaintiff's impairments were listed as asthma, osteoarthritis and allied disorders.  (Tr. 80).  Plaintiff did not begin mental health treatment until March 22, 2002, more than one (1) month after the initial denial of her claim for benefits.  As such, her mental impairment was not incorporated into this assessment of her impairments.

opinion from a medical expert.  Id. (citing Maniaci v. Apfel, 27 F.Supp.2d 554, 557 (E.D. Pa. 1998)); see also SSR 96-6p, "Medical Equivalence" (requiring an updated medical opinion from a medical expert where "symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable").  Here, Plaintiff's treatment notes consistently indicated that she only suffered from moderate limitations due to her mental impairment.  As such, remanding the issue for a determination regarding whether Plaintiff had "marked" functional limitations or "repeated episodes of decompensation" in order to determine medical equivalence is unnecessary.  See Levin v. Mississippi River Fuel Corp., 386 U.S. 162, 170 (1967) ("the point is so clear that [the court] see[s] no occasion for remanding the issue").  Because I find that the A.L.J. was not required to obtain an updated medical opinion finding, I conclude that this portion of the A.L.J.'s decision is supported by substantial evidence.

### D.    Hypothetical

The Third Circuit has held that a hypothetical question must reflect all of a claimant's impairments that are supported by the record.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  Notwithstanding, a condition that does not result in any functional impairment is not relevant to the R.F.C. analysis.  In the instant case, Plaintiff argues that the A.L.J. improperly failed to include environmental restrictions in her hypothetical to the V.E.  I disagree.  Dr. Ferreira, a state agency physician, opined that Plaintiff had no environmental limitations due to her asthma with the proviso that

Plaintiff comply strictly with her treatment, and avoid primary or secondary smoking.

(Tr. 163, 166).  Moreover, despite Plaintiff's habit of smoking a pack and a half of

cigarettes per day, none of Plaintiff's treating physicians recorded that Plaintiff's asthma

imposed functional limitations upon her.[16]  Accordingly, I find that this portion of the

A.L.J.'s opinion is supported by substantial evidence.

###       E.       Plaintiff's Subjective Complaints of Pain

In her next argument, Plaintiff contends that the A.L.J. failed to provide adequate

reasons for finding her testimony not fully credible.  Social Security Regulations require a

two- (2-) step evaluation of subjective symptoms: (1) A determination as to whether there

is objective evidence of a medically determinable impairment that could reasonably be

expected to produce the symptoms alleged; and (2) an evaluation of the intensity and

persistence of the pain or symptoms and the extent to which it affects the individual's

ability to work.  20 C.F.R. § 416.929(b).  Similarly, in accordance with S.S.R. 96-7p, the

A.L.J. is required to consider both the objective evidence of record, as well as Plaintiff's

subjective testimony.  See S.S.R. 96-7p, "Evaluation of Symptoms in Disability Claims:

Assessing the Credibility of an Individual's Statements."  An A.L.J. can reject a

claimant's subjective testimony if he does not find it credible, but must indicate in his

_____

[16]On February 19, 2002, a medical expert reviewed Plaintiff's medical record and opined that Plaintiff could perform medium work with both postural and environmental limitations.  (Tr. 168-175).  Plaintiff agrees with this assessment only to the extent that it imposes postural and environmental limitations upon her.  The A.L.J. did not accord any weight to this expert's opinion finding that Plaintiff was capable of only limited sedentary work with postural limitations.

decision which evidence he has rejected and which he is relying on as the basis for his

finding.  See Schaudeck v. Commissioner, 181 F.3d 429, 433 (3d Cir. 1999); see also

S.S.R. 96-7p ("The reasons for the credibility finding must be grounded in the evidence

and articulated in the determination or decision").  Therefore, although a claimant's

subjective allegations must be considered, there must also be objective medical evidence

of an impairment or combination of impairments which could reasonably cause the

symptoms, limitations and functional restrictions alleged.  20 C.F.R. § 416.929(b)-(c);

S.S.R. 96-7p.

> In discussing Plaintiff's credibility, the A.L.J. stated:

> > Having reviewed the record in its entirety, the [A.L.J.] concludes that
> > [Plaintiff] has underlying medically determinable impairments that
> > could reasonably be expected to result in the symptoms as alleged.
> > The [A.L.J.] finds that it is not creditable [sic] that [Plaintiff] cannot
> > perform any work.  The consultative examiner could find no
> > disabling condition, nor even a severe limitation for [Plaintiff].

> > * * * *

> > When comparing the evidence and the testimony, the [A.L.J.] notes
> > that the record contains several inconsistencies which adversely
> > affect [Plaintiff's] credibility.  She told the consultative examiner
> > that she had stopped smoking "about a year and a half ago" (June
> > 2000); she then testified at the hearing that she smokes 15 cigarettes
> > per day; and yet on [two] 2 occasions she told her psychologist that
> > she smoked [two] 2 packs per day.  In addition[,] she stated at the
> > hearing that she had been using a cane for support for some time, yet
> > the neurologist she saw in December 2003 makes no mention of it,
> > nor does he mention the unsteady gait and back pain she ascribes to.

> > The [A.L.J.] is of the opinion that [Plaintiff] has a tendency to

exaggerate the extent of her symptoms.  While the [A.L.J.] believes that [Plaintiff] does have some symptoms and limitation of function, it is not to the extent that [Plaintiff] alleges.  Therefore, based upon a consideration of the subjective allegations weighed against objective medical evidence and other relevant information bearing on the issue of credibility, the [A.L.J.] finds that [Plaintiff's] assertions concerning the severity of her impairments, and their impact on her ability to work, are only credible to the extent that they support a finding of being able to perform work at the sedentary level with the cited preclusions.

(Tr. 33-34).  Thus, the A.L.J. did not fully credit Plaintiff's testimony concerning her impairments and their impact on her ability to work.

I agree with the A.L.J.'s conclusion.  There is no dispute that objective evidence establishes the existence of medically determinable physical impairments that could reasonably be expected to produce Plaintiff's alleged symptoms, which the A.L.J. also found to be severe.  (Tr. 25).  However, I find that the record supports serious reservations regarding the alleged intensity and persistence of Plaintiff's symptoms and the extent to which it affects her ability to work.  For example, although Plaintiff alleged disabling side effects from her Avonex injections, her physician only recommended that she take over-the-counter Aleve or Tylenol to alleviate her symptoms.  (Tr. 281-282).  Furthermore, as the A.L.J. pointed out, Plaintiff's treatment for her physical impairments involved only "routine outpatient care" with little or no continuing treatment.  (Tr. 33).

Here, the A.L.J. considered Plaintiff's subjective complaints in the context of her medical records.  In doing so, the A.L.J. set forth a detailed explanation for why she found Plaintiff's allegations to be not fully credible.  (Tr. 33-34).  Moreover, the A.L.J.

accommodated Plaintiff's subjective complaints by limiting Plaintiff to a reduced range

of sedentary work, including work limited to "simple repetitive tasks with only occasional

contact with the public and coworkers."  (Tr. 29).  For these reasons, I conclude that this

portion of the A.L.J.'s decision is supported by substantial evidence.

## F.    Adequacy of Residual Functional Capacity Findings

Plaintiff next contends that the A.L.J. erred in assessing her R.F.C.[17] at step five

(5) of the sequential evaluation because the A.L.J. failed to consider the impact of her

severe and non-severe impairments, including her asthma, multiple sclerosis, obesity and

degenerative joint disease of the right knee.  I find that the A.L.J. properly accounted for

Plaintiff's physical limitations, however, by reducing Plaintiff's R.F.C. from medium to

the sedentary exertional level with occasional postural restrictions.  (Tr. 28-34).

Moreover, as the A.L.J. pointed out, Plaintiff's allegation that her knee impairment, in

combination with her obesity and multiple sclerosis, required the use of a cane, is not

supported by the record.[18]  (Tr. 31).  Consequently, Plaintiff's assertion that her need for

_____

[17]"'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairments."  Burnett, 220 F.3d at 121 (citing Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).  The R.F.C. assessment is properly based upon all of the relevant evidence of an individual's work-related activities.  See S.S.R. 96-8p.  It is axiomatic that the A.L.J. must consider all of Plaintiff's conditions revealed by the record, and that the conditions must be considered in combination.  See Burnett, 220 F.3d at 122 (as part of the R.F.C. analysis, "the A.L.J. must consider the combined effects of multiple impairments, regardless of their severity"); 20 C.F.R. § 416.945.

[18]The only mention of a cane in the record was made by Dr. Soto in a letter written on the date of Plaintiff's administrative hearing.  (Tr. 286).  In that letter, the doctor stated that Plaintiff's multiple sclerosis caused leg pain which made her unbalanced.  (Tr. 286).  However, as the A.L.J. points out, Dr. Soto provided no treatment records accounting for this level of

ambulatory assistance negatively impacts her level of functioning must be dismissed.

To the extent that Plaintiff argues that the mental restrictions imposed by Dr. Ballas would further restrict Plaintiff's ability to perform sedentary work, I note that I previously found that the A.L.J. properly credited Dr. Ballas's opinion only to the extent that it was supported by the medical record. As such, I believe that the A.L.J. properly determined that Plaintiff's anxiety disorder limited her to minimal societal interaction and simple repetitive tasks.

Because I find that the A.L.J. appropriately considered the combined effects of Plaintiff's severe and non-severe impairments in assessing her R.F.C., I find that this aspect of the A.L.J.'s decision is supported by substantial evidence.

G.    Job Stresses

In her final argument, Plaintiff alleges that the A.L.J. erred in failing to elicit information from the V.E. regarding the "stress" involved in the jobs outlined by the V.E.'s testimony as required by Social Security Ruling 85-15. In support thereof, Plaintiff refers to Dr. Ballas's opinion that Plaintiff was "markedly impaired" in her ability to respond appropriately to changes and stress. (Tr. 284). As previously discussed, however, I note that I have found that the A.L.J. properly accorded little weight to Dr. Ballas's September 2003 assessment of Plaintiff's functional limitations. See Burns v. Barnhart, 312 F.3d 113, 130 (3d Cir. 2002) ("[a]lthough Ruling 85-15 does

---

deterioration in Plaintiff's condition. (Tr. 31). Furthermore, treatment records from the previous month fail to indicate Plaintiff's use of a cane or the fact that her gait was unsteady. (Tr. 31).

direct an A.L.J. to consider non-exertional impairments, such as stress, in determining

whether a person's residual functional capacity enables him to work, we do not believe,

absent some medical evidence or diagnostic opinion, that . . . [a] passing reference . . .

triggered an obligation to further inquire into stress as a disabling factor").  In any event, I

find that the A.L.J. did give consideration to Plaintiff's anxiety and/or stress.  Due to

Plaintiff's difficulties with interpersonal skills, the A.L.J.'s R.F.C. determination limited

her to work requiring minimal interaction with people and restricted to simple repetitive

tasks.  See Hancock v. Barnhart, 2004 WL 2755553, at *4 (E.D. Pa. Nov. 30, 2004).  As

such, and because I find that the A.L.J. included in her hypothetical all of the limitations

credibly established by the record, I conclude that this portion of the A.L.J.'s decision is

supported by substantial evidence.

> Therefore, I make the following:

## RECOMMENDATION

> AND NOW, this        Day of July, 2005, it is RESPECTFULLY

RECOMMENDED that Plaintiff's Motion of Summary Judgment be DENIED;

Defendant's Motion for Summary Judgment be GRANTED; and the final decision of the

Commissioner be AFFIRMED.

> BY THE COURT:


>  /s
> PETER B. SCUDERI
> UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SONIA HERNANDEZ                         :          CIVIL ACTION
Plaintiff,                                       :
                                                 :
        v.                                       :
                                                 :
JO ANNE B. BARNHART,                    :
Commissioner of Social Security,        :
Defendant                                    :          No. 04-5458

**O R D E R**

AND NOW, this    day of                , 200   , upon careful consideration of the

Report and Recommendation filed by United States Magistrate Judge Peter B. Scuderi,

and upon independent review of the Cross Motions for Summary Judgement filed by the

parties, it is hereby ORDERED that:

1.      The Report and Recommendation is APPROVED and ADOPTED.

2.      Plaintiff's Motion for Summary Judgment is DENIED

3.      Defendant's Motion for Summary Judgment is GRANTED.

4.      The decision of the Commissioner which denied Supplemental Security
        Income is AFFIRMED.

BY THE COURT:

_____

JOHN R. PADOVA, J.